Terrance L. SCHREINER, Respondent,

v.

C.S. McCROSSAN, INC. and Fireman's
Fund Insurance Co., Respondents,

and

Hopson Enterprises and Home
Insurance Company, Relators,

and

Northland Building Services and Minne-
sota Assigned Risk Plan (DCA),

and

Special Compensation Fund,
Respondents.

No. C6–90–1509.

Supreme Court of Minnesota.

Jan. 18, 1991.

Rehearing Denied March 5, 1991.

Daniel A. Lively, Minneapolis, for relators.

Suzanne Wells Sabah, St. Paul, for Terrance L. Schreiner.

Kenneth B. Huber, St. Louis Park, for C.S. McCrossan, Inc.

Rebecca H. Hamblin, Sp. Asst. Atty. Gen., Atty. Gen. State of MN, St. Paul, for Sp. Compensation Fund.

David L. Christianson, Minneapolis, for Northland.

Peter Pusturino, Minneapolis, for amici curiae MN Defense Lawyers Ass'n.

Deborah L. Crowley, Minneapolis, for amici curiae Ins. Federation of MN.

## OPINION

TOMLJANOVICH, Justice.

Hopson Enterprises and its workers' compensation liability insurer, Home Insurance Company, seeks review by certiorari of the Workers' Compensation Court of Appeals's decision that Minn.Stat. § 176.131, subd. 1(a) (1990) permits the Special Compensation Fund to seek apportionment of liability between a physical impairment registered with the Fund in December 1986 and an injury that occurred on April 4, 1988. We affirm.

On May 27, 1980, Terrance L. Schreiner sustained a work-related low back injury while working for C.S. McCrossan, Inc. On December 7, 1983, Schreiner sustained another work-related low back injury while working for Hopson Enterprises. Hopson and its workers' compensation liability insurer, Home Insurance Company, accepted liability and paid workers' compensation benefits, including compensation for a 20% permanent partial disability to the back. On December 31, 1986, the Special Compen-

sation Fund accepted Hopson/Home's application to register Schreiner as a physically impaired employee for second injury fund purposes. On April 4, 1988, Schreiner sustained a third low back injury while working for Northland Building Services and subsequently sought workers' compensation benefits for that injury.

The compensation judge found that Schreiner's preexisting physical impairment substantially increased the disability produced by his 1988 injury. The compensation judge further found that the Special Compensation Fund could not seek apportionment of liability pursuant to section 176.131, subd. 1(a) for the injury that had occurred after the effective date of that section because the preexisting disability had been registered prior to the effective date of the section. On appeal, the Workers' Compensation Court of Appeals reversed and remanded by majority decision. Hopson/Home now contend that section 176.131, subd. 1(a) does not apply to disabilities registered with the Fund prior to the effective date of that provision.

The Special Compensation Fund spreads the cost of certain workers' compensation benefits among all workers' compensation insurers. Most of the Fund's revenues are derived from assessments against insurers and self-insurers. The oldest component of the Special Compensation Fund is the "second injury fund" for payment of subsequent injury claims. Although commonly called the "second injury fund," it applies to all subsequent injuries. In fiscal 1987, about 34% of the Special Compensation Fund's expenditures went to subsequent injury claims. Minnesota Department of Labor and Industry, *Report to the Legislature on Workers' Compensation in Minnesota* 41 (1988); State of Minnesota, Office of the Legislative Auditor, Program Evaluation Division, *Workers' Compensation Program* 90 (1988).

The basic purpose of the second injury fund has been to encourage employers to retain or hire the physically handicapped. The statutory scheme imposes liability on the employer for injuries sustained by employees who had physical disabilities prior

to the time they were hired. The employer then has a right to seek reimbursement from the Special Compensation Fund once certain statutory requirements are met. *Koski v. Erie Mining Co.*, 300 Minn. 1, 5, 223 N.W.2d 470, 473 (1973); W. Ehlmann, *Minnesota's Special Compensation Fund*, 6 Wm. Mitchell L.Rev. 709, 712 (1980); *see generally*, 2 Larson, *The Law of Workmen's Compensation*, § 59.31(a) (1989).

■ There are three basic requirements for reimbursement from the Fund: (1) registration, (2) second injury made substantially greater because of preexisting disability, (3) payment of sufficient compensation benefits to assert a claim or "reimbursement threshold." Minn.Stat. § 176.131, subds. 1 and 3 (1988). Because the right to reimbursement vests at the time of registration, legislation subsequent to registration cannot destroy an otherwise valid registration or alter the reimbursement threshold. *See, e.g., Miller v. Norris Creameries*, 306 Minn. 79, 235 N.W.2d 203 (1975) (*Miller I*); *Miller v. Norris Creameries*, 311 Minn. 343, 250 N.W.2d 161 (1976) (*Miller II*); *Lutz v. Spencer Packing Company*, 304 Minn. 1, 229 N.W.2d 14 (1975); *Stangel v. Lakehead Construction*, 306 Minn. 86, 235 N.W.2d 200 (1975); *see also Fryhling v. Acrometal Products, Inc.*, 269 N.W.2d 744 (Minn.1978).

■ In *Koski v. Erie Mining Co., supra,* we concluded the then-existing second injury law did not authorize the Special Compensation Fund to apportion liability between preregistration and post-registration injuries.[1] As a result of *Koski*, the Fund was obligated to reimburse the second employer for all compensation due after the deductibles even when clear medical evidence established that more than 50% of the disability was attributable to earlier injuries. In response to the resulting financial burden, in 1987 the Fund sought

the following amendment to section 176.131 to permit apportionment:

Subdivision 1. If an employee incurs personal injury and suffers disability *from that injury alone* that is substantially greater, because of a preexisting physical impairment, than what would have resulted from the personal injury alone, the employer *or insurer* shall pay all compensation provided by this chapter, but the employer shall be reimbursed from the special compensation fund for all compensation paid in excess of 52 weeks of monetary benefits and $2,000 in medical expenses, subject to the ~~following~~ exceptions *in paragraphs (a), (b),* and *(c):*

*(a) If the disability caused by the subsequent injury is made substantially greater by the employee's registered preexisting physical impairment, there shall be apportionment of liability among all injuries. The special compensation fund shall only reimburse for that portion of the compensation, medical expenses, and rehabilitation expenses attributed to the subsequent injury after the applicable deductible has been met.*

1987 Minn.Laws ch. 332, § 30.

■ In this case, the Workers' Compensation Court of Appeals determined that under the 1987 amended language of subdivision 1(a), which remained unchanged at the time of injury, the Fund could seek apportionment of liability between Schreiner's preexisting disability, which had been registered in 1986, and the 1988 injury for which the Fund was obligated to reimburse the "second" or subsequent employer.

■ Relying on *Miller I* and *Miller II, supra,* the employers/insurers [2] argue that the law in effect on the date of registration of the employee's preexisting impairment "controls" the applicability of section 176.-131, subd. 1(a). As the Workers' Compensation Court of Appeals observed, however,

---

1. Where the Fund is not involved because the first injury was not registered, however, the principles of equitable apportionment between employers/insurers apply. *Goetz v. Bulk Commodity Carriers,* 303 Minn. 197, 226 N.W.2d 888 (1975).

2. We granted leave to the Insurance Federation of Minnesota and the Minnesota Defense Lawyers Association to file amicus curiae briefs. Respondents Northland Building Services and its insurer, Minnesota Assigned Risk Plan, also filed a brief.

these principles pertain only to those employers for whom the protection of the second injury fund was created: post-registration employers who retain or hire the disabled employee and therefore have the right to reimbursement following the second injury.[3] Even though an employer's right to reimbursement vests at the time of registration, this right remains contingent until that time when the employee sustains a second injury.

Generally, the law in effect at the time of injury or death governs rights and liabilities regarding compensation. This was explained in *Joyce v. Lewis Bolt & Nut Co.*, 412 N.W.2d 304 (Minn.1987):

> Strictly speaking, the rights and liabilities created by the Workers' Compensation Act are imposed on the employment relationship pursuant to the police power, independently of any actual or implied contract. On the theory, however, that the statute becomes a part of the contract of employment we have treated the Workers' Compensation Act as contractual in nature, and we have consistently held that "any statute which purports to alter a substantial term of the contract which was in effect at the time the controlling event occurred * * * impairs the obligation of such contract and is therefore unconstitutional." It is, then, a basic tenet of workers' compensation law that the substantive rights of employer and employee are fixed, not by their agreement, but rather by the law in effect on the date of the controlling event. Although death is the event which controls the rights of dependents, and although the controlling event with respect to an occupational disease is the manifestation of its disabling effect, most often the occurrence of a compensable personal injury is the controlling event.

412 N.W.2d 307 (citations omitted).

When Schreiner sustained his post-registration injury on April 4, 1988, his right to

compensation and his 1988 employer's liability were governed by Minn.Stat. § 176.131 subd. 1 (effective July 1, 1987). Therefore, Schreiner was entitled to recover compensation from his employer and his employer and its insurer were entitled to seek reimbursement from the Fund. *See Boltz v. Armour Agricultural Chemical Co.*, 269 Minn. 482, 131 N.W.2d 624 (1964).

Affirmed.

GARDEBRING, J., took no part in the consideration or decision of this case.

---

**3.** Relying on *Knaeble v. City of Crystal*, 271 N.W.2d 833 (Minn.1978), a decision rejecting the claim of a second employer/insurer who failed to perfect a claim against the Special Compensation Fund for contribution from the prior employer/insurer, amicus Insurance Federation contends that the second injury fund was created to protect employers/insurers on risk for preregistration injuries. In *Knaeble*, however, this court concluded that apportionment contravenes the equitable principle that where loss is to fall on one of two innocent parties, it should fall on the one in a position to have prevented it. *See id.* at 835.