**Douglas M. BERENDS, Respondent,**

v.

**BELL ELECTRIC COMPANY INC., Relator,**

**Western National Mutual Insurance Co., Relator,**

**State Treasurer, Custodian of the Special Compensation Fund, Respondent.**

No. CO–83–62.

Supreme Court of Minnesota.

April 13, 1984.

James R. Waldhauser, Thomas P. Kieselbach, Minneapolis, for relators.

Harold W. Schultz II, Spec. Asst. Atty. Gen., St. Paul, for respondent State Treasurer.

WAHL, Justice.

Bell Electric Company (Bell Electric) and Western National Mutual Insurance Company (Western National) appeal from a decision of the Workers' Compensation Court of Appeals affirming a denial by the compensation judge of their claim for reimbursement under Minnesota's second injury law, Minn.Stat. § 176.131 (1982), for workers' compensation benefits paid to employee Douglas Berends. The issue is whether Bell Electric and Western National complied with the registration provisions of section 176.131 so as to be entitled to second-injury reimbursement. We hold that they did not and affirm.

Berends received an injury to his back in a snowmobile accident in April 1971 which resulted in a laminectomy from which he fully recovered. Subsequently he obtained employment with Bell Electric, who had no knowledge of the prior injury. On September 24, 1980, he sustained an injury arising out of the scope and in the course of his employment which was in the nature of a permanent aggravation of the pre-existing injury. The parties have stipulated that this second personal injury was made substantially greater because of the pre-existing physical impairment than would have resulted from the second injury alone. The second injury necessitated surgery nearly identical to the 1971 surgery. This time Berends did not recover and has been virtually disabled since November 4, 1980.

Western National paid substantial compensation benefits to Berends for the second injury. Bell Electric and Western National sought reimbursement of those payments from the Special Compensation Fund when the pre-existing injury came to their attention. They requested Dr. Peter J.

Strand, who performed the 1971 surgery, to rate respondent's permanent partial disability resulting from that injury according to workers' compensation standards. Dr. Strand assigned a 10% rating. Using that 10% permanent partial disability rating and a one-page medical report detailing the 1971 surgery as evidence of pre-existing physical impairment, Bell Electric and Western National filed an application to register Berends with the Workers' Compensation Division of the Department of Labor and Industry on December 9, 1980.

The Workers' Compensation Division rejected the application for registration on January 27, 1981, giving as a reason that the 10% rating was insufficient for registration under the Second Injury Law. Bell Electric and Western National did not appeal this rejection but later filed a Notice of Intention to Claim Reimbursement on March 12, 1981, based on the ineffective registration. The Special Compensation Fund rejected the registration and denied the reimbursement claim on May 4, 1981. Bell Electric and Western National appealed on June 30, 1981. After appealing, they requested Dr. John T. Anderson, who performed the second surgery, and Dr. Strand to review the medical records and re-rate the first injury for permanent partial disability. On July 7, the doctors reassigned a 15% permanent partial disability rating to the first injury.

The compensation judge determined that there had been no effective registration of a pre-existing physical impairment pursuant to statute. The Workers' Compensation Court of Appeals unanimously affirmed denial of the reimbursement claim. This appeal by writ of certiorari followed.

The Minnesota Second Injury Law provides for reimbursement to employers of compensation paid for an injury made substantially greater because of a pre-existing physical impairment. In order to be entitled to reimbursement an employer must comply with the registration provisions of section 176.131, subd. 3(b), which provides:

> The employee with a pre-existing physical impairment must have been registered with the commissioner of labor and industry prior to the employee's personal injury or within 180 days after notice of the employee's personal injury is received by the employer. Registration subsequent to the injury shall be based on a medical report made prior to the injury indicating the pre-existing physical impairment.

Subdivision 5(a) requires that the registration be accompanied by satisfactory evidence of such physical impairment.

The 180-day period for post-second-injury registration was added by the legislature in 1979. Prior to that time, pre-existing physical impairments had to be registered before the occurrence of subsequent injuries in order to establish eligibility for reimbursement. Did the legislature, by extending the time for registration, also extend the time for gathering proof of a registrable physical impairment?

The physical impairments listed in section 176.131, subd. 8 are, for the most part, conditions which, once diagnosed, may be registered on the basis of medical reports made prior to the second injury which contain the diagnosis, regardless of whether those reports contain a rating of permanent partial disability. Such records would be *prima facie* proof of the pre-existing impairment. The impairment in Berends' case, however, is registrable under subd. 8(*o*), which provides for registration of "[a]ny other physical impairment for which at least 50 weeks or more of weekly benefits would be payable as permanent partial disability if the physical impairment were evaluated according to standards used in workers' compensation proceedings * * *." This language would include a pre-existing impairment that was not rated for workers' compensation proceedings at the time of the injury, as is the case here. Clearly, a rating of permanent partial disability to prove an impairment under subd. 8(*o*) may be assigned long after the occurrence of the injury for purposes of registration, but must the rating be made before the occurrence of any subsequent compensable injury in order to establish eligibility for reim-

bursement?[1] The custodian of the Special Compensation Fund argues that it must. Western National argues that such an interpretation would defeat the purpose of the statute.

The purpose of the Second Injury Law is to "encourage the employment of physically impaired persons." *Koski v. Erie Mining Co.*, 300 Minn. 1, 5, 223 N.W.2d 470, 473 (1973). By reimbursing an employer for benefits paid to an employee for an injury made substantially greater by a pre-existing impairment, the state encourages employers to hire persons without searching minutely into medical backgrounds and discourages rejection of applicants with physical impairments. To hold that physical impairments from a former injury must be rated before the occurrence of a subsequent injury in order to be registrable would encourage employers to reject applicants whose medical histories showed previous injury that had not been rated for workers' compensation or to require that the applicants obtain a rating as a condition of employment. It would limit the statute and defeat the intent of the legislature. We hold that a pre-existing physical impairment registrable under subd. 8(o) may be rated after the occurrence of a subsequent compensable injury so long as that rating is made solely on the basis of medical reports made prior to the injury. But how long after the second injury may the rating be made, and what must that rating be to prove physical impairment?

A physical impairment, to be registrable under subd. 8(o) in December 1979, must have been significant enough to qualify for 50 weeks of compensation as a permanent partial disability. A back injury, as here, qualified for 50 weeks of compensation if it was rated 15% permanent partial disability or higher. *See* Minn.Stat. § 176.101, subd. 3(42) (1982). The rating that Bell Electric and Western National obtained from Dr. Strand of Berends' permanent partial disability from the 1971 injury and submitted with their December 1979 application for registration was 10%. The Workers' Compensation Division legitimately rejected the application for registration because of the insufficient rating. WC Rule 20, 50 MCAR, Rules of the Department of Labor and Industry, at p. 251, (1982) prescribes the nature of the medical evidence required as proof of impairment as well as procedures for appeal on rejection of an application for registration. Here, the medical evidence was insufficient and the employer and insurer did not appeal the rejection.

Subsection 2 of Rule 20 requires that medical evidence submitted with the application for registration show the nature of the impairment as well as the doctor's signature and various dates. The nature of the impairment, registrable under subd. 8(o), includes the percentage of permanent partial disability necessary to establish that the impairment is indeed registrable. Without a rating, or with an insufficient rating, all the Workers' Compensation Division can reasonably do is reject the application.

Bell Electric and Western Mutual contend that the only evidence that need be attached to the application for registration is a medical record which may show sufficient impairment. They argue that the rating can then be submitted any time thereafter. The argument makes sense so long as the rating is received within the 180-day registration period. Subdivision 3(b) of the statute states, however, that a pre-existing physical impairment "must have been registered * * * within 180 days after notice of the employee's personal injury is received by the employer." Without a rating, or with an insufficient rating, the physical impairment cannot "have been registered" within the 180 days, because it is not registrable without evidence that it meets statutory requirements. The only evidence that Western National submitted

---

1. In this case, the Workers' Compensation Division apparently assumed that the impairment may be registered after the compensable injury, because the rejection of the application here was based on the inadequate rating rather than on the fact that it had been assigned after Berends' second injury.

within the 180-day period was a medical report of the previous back surgery and Dr. Strand's notation of 10% permanent partial disability.

We recognize that physicians are busy people and that employers or insurers may have to wait some time for a reply to a request to rate a pre-existing impairment. The legislature has, however, granted a 6-month grace period in which to register an impairment, and we hold that a rating may be assigned during that period. Here, the employer and insurer received the first rating, albeit an insufficient one, within days of their request. The second rating was also received within days of the request.

There is nothing in the statute that requires the Workers' Compensation Division to hold all applications for registration open indefinitely, no matter how insufficient the medical evidence, in order to grant an opportunity for the applicant to finally gather sufficient proof of a registrable impairment. Bell Electric and Western National knew by the end of January that their application was rejected. They did not appeal the rejection or take any steps to correct the "erroneous" rating. It was not until rejection of their application for reimbursement that they sought and received a higher rating, well after the 180-day registration period. We hold that when an employer seeks to register an employee with a pre-existing impairment under subd. 8(o), evidence of that impairment, including a statutorily sufficient rating of permanent partial disability, must be submitted to the Workers' Compensation Division within the 180-day period allowed for post-second-injury registration by subd. 3(b).

While the Workers' Compensation Court of Appeals erred in holding that a pre-existing physical impairment could not be rated as a permanent partial disability after the occurrence of a subsequent injury for the purposes of registration, the court properly denied the claim for reimbursement. The only medical evidence submitted with the application for registration

within the 180-day period was insufficient to register the pre-existing impairment. Bell Electric and Western National are not entitled to reimbursement under the facts of this case.

Affirmed.